

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Nelson Negrón Rivera<br><br>Peticionario | Certiorari<br><br>2011 TSPR 157<br><br>183 DPR \_\_\_\_ |

Número del Caso: CC - 2010 - 0463

Fecha: 28 de octubre de 2011

Tribunal de Apelaciones:

      Región Judicial de Ponce Panel X - Especial

Jueza Ponente:

      Hon. Carmen H. Carlos Cabrera

Abogada de la Parte Peticionaria:

      Lcda. Wanda Tamara Castro Alemán

Oficina de la Procuradora General:

      Lcda. Luana R. Ramos Carrión
      Procuradora General Auxiliar

Materia: 401 de la Ley de Sustancias Controladas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
     Recurrido

    v.

Nelson Negrón Rivera
    Peticionario

*Certiorari*

CC-2010-463

*RESOLUCIÓN*

En San Juan, Puerto Rico, a 28 de octubre de 2011.

Examinado el recurso de *certiorari*, y después de haber considerado lo expresado por la Procuradora General en su "Escrito para mostrar causa" y lo expresado por el peticionario Nelson Negrón Rivera en su "Moción aclaratoria y breve réplica al escrito para mostrar causa", se provee "no ha lugar" al recurso.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió un Voto de conformidad. El Juez Asociado señor Rivera García emitió un Voto particular de conformidad al cual se une la Jueza Asociada señora Pabón Charneco. La Jueza Asociada señora Fiol Matta emitió un Voto particular disidente al cual se une el Juez Presidente señor Hernández Denton. El Juez Asociado señor Estrella Martínez emitió un Voto disidente al cual se unen el Juez Presidente señor Hernández Denton y el Juez Asociado señor Kolthoff Caraballo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

Recurrido

v.

CC-2010-463

Nelson Negrón Rivera

Peticionario

Voto de Conformidad emitido por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 28 de octubre de 2011.

Para decidir si acogemos este recurso hemos analizado el Art. 308 del Código Penal de 2004, 33 L.P.R.A. sec. 4935. En específico, auscultamos si la cláusula de reserva de ese artículo contiene una excepción en lo relativo a la imposición de la pena. Como el Art. 308, íd., no hace distinción en lo referente a la pena, y que su historial legislativo demuestra su alcance verdadero, estoy conforme con el resultado alcanzado por este Tribunal al denegar la expedición del auto de *certiorari*.

I

Por hechos ocurridos el 13 de abril de 2004 el

Sr. Nelson Negrón Rivera fue acusado por el delito de posesión de sustancias controladas con intención de distribuirlas. Art. 401(a)(2) de la Ley Núm. 109 de 4 de junio de 1980, conocida como Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2401. Además, se le imputó reincidencia habitual porque ya contaba con dos convicciones anteriores.

El 22 de diciembre de 2006 el Tribunal de Primera Instancia sentenció al señor Negrón Rivera bajo el Código Penal de 1974 y lo encontró reincidente habitual al amparo del Art. 62 de ese Código, 33 L.P.R.A. sec. 3302. Como resultado de lo anterior, se le impuso la pena de cárcel con separación permanente de la sociedad.

II

El Art. 308 del Código Penal de 2004, supra, establece:

> La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho.

> Si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y liberar a la persona. El cambio de nombre de un delito no significa que el tipo delictivo ha quedado suprimido.

La opiniones disidentes de los compañeros Jueces Asociados señora FIOL MATTA y señor ESTRELLA MARTÍNEZ sostienen que la cláusula de reserva del Art. 308, íd., se refiere solamente a la tipicidad de la conducta y que no

abarca la imposición de la pena. De esta forma, aplicarían el principio de favorabilidad recogido en el Art. 9 del Código Penal, 33 L.P.R.A. sec. 4637, para concluir que en este caso procede aplicar la reincidencia al amparo del Código Penal de 2004. Sin embargo, un análisis del trámite legislativo demuestra que la Asamblea Legislativa, luego de recibir varias ponencias al respecto, hizo un cambio al Art. 308, supra. En particular, eliminó una oración que precisamente recogía la conclusión a la que llegan los compañeros.

El P. del S. Núm. 2302 de 12 de mayo de 2003, establecía en su Art. 308:

> La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho. **Sin embargo, todas las disposiciones de este Código le serán aplicables si resultara de dicha aplicación un tratamiento más favorable al imputado o al sentenciado.**
>
> Si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y liberar a la persona. El cambio de nombre de un delito no significa que el tipo delictivo ha quedado suprimido. [Énfasis suplido.]

Como se aprecia, el P. del S. Núm. 2302, supra, contenía una oración que específicamente permitía la aplicación favorable del Código Penal de 2004 a la conducta delictiva cometida durante la vigencia del Código Penal de 1974. Incluso, el proyecto de ley hacía alusión a los términos imputados y sentenciados. De esta forma, se

establecía diáfanamente que la aplicación retroactiva favorable incluía lo concerniente a la pena, tal como concluyen los hermanos Jueces Asociados señora FIOL MATTA y señor ESTRELLA MARTÍNEZ.

Sin embargo, las críticas al Art. 308 propuesto no se hicieron esperar. Así pues, la entonces Secretaria de Justicia, hoy Juez Asociada de este Foro, señora RODRÍGUEZ RODRÍGUEZ, presentó una ponencia el 3 de junio de 2003 en la que señaló:

> El Artículo 308 establece que todas las disposiciones del Código Penal serán aplicables si resultan en un tratamiento más favorable al imputado o al sentenciado. **Tal disposición no es conveniente pues crea el escenario para que se produzcan un sinnúmero de planteamientos de proporciones insospechadas que pudieran afectar detrimentalmente el proceso efectivo de las causas en curso y aún de las ya adjudicadas.** La aplicación retroactiva de las disposiciones de este Código **es un asunto de grave preocupación** para m[í] como Secretaria y como principal funcionaria encargada de velar por el cumplimiento de las leyes. Por consiguiente, entiendo que se debe suprimir la segunda oración del primer párrafo del Art. 308, líneas 13 a 15, pág. 122 del proyecto. [Énfasis suplido.]
>
> http://www.ramajudicial.pr/CodigoPenal/acrobat/46-2003_0603-Departamento-de-Justicia.PDF. (Última visita, 18 de octubre de 2011.)

Esta parte de la ponencia demuestra sin ambages una preocupación genuina de parte de la entonces Secretaria de Justicia por las consecuencias prácticas que la aplicación retroactiva del Código Penal de 2004 habría tenido si se aprobaba sin enmiendas. Agraciadamente, la ponencia citada no cayó en oídos sordos. De esta forma, el informe de la

Comisión de lo Jurídico de 22 de junio de 2003 sobre el P. del S. 2302, pág. 67, señaló lo siguiente:

> Esta Comisión acoge la recomendación de la Secretaria de Justicia de que se enmiende el P. del S. 2302 para que en el Artículo 30[8] se elimine la oración "[s]in embargo, las disposiciones de este Código le serán aplicables si resultara de dicha aplicación un tratamiento más favorable al imputado o al sentenciado." **La intención del legislador es** que este Código aplique a **delitos** cometidos con posterioridad a su vigencia, salvo en cuanto a lo dispuesto en el segundo párrafo de ese artículo para el caso en que este Código suprima algún delito. [Énfasis suplido.]

Esta expresión legislativa es contundente. Contrario a lo indicado por el Juez Asociado señor ESTRELLA MARTÍNEZ en su Voto Disidente, en el informe de la Comisión de lo Jurídico sí se incluyó el término delito. Se esbozó que la intención legislativa era que el Código Penal de 2004 aplicara a los delitos cometidos con posterioridad a su vigencia. De esta forma, se disipan todas las dudas en torno al alcance del Art. 308, supra.

Más aún, la posición del hermano Juez Asociado señor ESTRELLA MARTÍNEZ de aplicar el Código Penal de 2004 como la ley más benigna no solo revive el lenguaje que el legislador eliminó sino que borra de un plumazo el texto que el mismo legislador aprobó. Entonces, ¿dónde queda el primer párrafo del Art. 308, íd., que ordena que la conducta delictiva cometida cuando estaba vigente el Código Penal de 1974 se procese según las disposiciones de ese cuerpo de ley y no por las del Código Penal de 2004?

Además, conviene señalar que no es la primera vez que este Tribunal se enfrenta a esta controversia. Así, en Pueblo v. Padín Rodríguez, 169 D.P.R. 521 (2006), nos negamos igualmente a expedir un auto de *certiorari*, luego de dos mociones de reconsideración, en que la controversia era idéntica a la que hoy nos ocupa. Allí, la Jueza Asociada señora FIOL MATTA emitió un voto disidente, al igual que en este caso.

III

Luego de analizar en su justa perspectiva el historial legislativo del Art. 308 del Código Penal de 2004, <u>supra</u>, resulta forzoso concluir que este no contiene excepciones en lo referente a la imposición de la pena. La intención legislativa plasmada en el informe de la Comisión de lo Jurídico del Senado y la propia redacción del Art. 308 no hace distinción entre la conducta, los elementos del delito y su pena.

Somos conscientes que con posterioridad a nuestra opinión en <u>Pueblo v. González Ramos</u>, 165 D.P.R. 675 (2005), se presentó el P. de la C. 2076 de 10 de octubre de 2005, que pretendía enmendar el Art. 308, <u>supra</u>. Sabemos que el proyecto no se aprobó. Ahora bien, es necesario dejar claro que a la hora de estudiar la intención legislativa en una ley, como el Código Penal, es necesario brindarle gran deferencia al historial legislativo de la medida que se aprobó, no de la que se aprobó o derrotó después. "Es principio cardinal de interpretación estatutaria el que al

lenguaje de la ley debe dársele el significado que valide el propósito que tuvo el legislador al aprobarla". R.E. Bernier y J.A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, San Juan, Publicaciones JTS, Inc., 2da. ed., 1987, pág. 245. La liberalidad en la interpretación no puede conducirnos a violentar la intención legislativa. Íd., pág. 267. Claro está, hacemos esto sin violar el principio de legalidad consagrado en el Art. 2 del Código Penal, 33 L.P.R.A. sec. 4630.

En ocasiones es útil evaluar proyectos de ley posteriores que intentan aclarar algo que parece confuso en una ley. No obstante, nuestra labor es interpretar la intención legislativa en las leyes aprobadas y no en los proyectos que nunca se convirtieron en ley.

En el caso que nos ocupa, el señor Negrón Rivera cometió la conducta delictiva el 13 de abril de 2004 cuando todavía estaba vigente el Código Penal de 1974. Así las cosas, lo correcto es que se le declarara reincidente habitual al amparo de ese Código, como ocurrió.

IV

Por los fundamentos expuestos, estoy conforme con la decisión de este Tribunal de denegar la expedición del auto de *certiorari*.

RAFAEL. L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.

Nelson Negrón Rivera

    Peticionario

CC-2010-0463

Voto particular de conformidad emitido por el Juez Asociado Señor Rivera García, al cual se une la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 28 de octubre de 2011.

> "La criminalidad es uno de los problemas que más preocupa al Pueblo de Puerto Rico. El azote del crimen ha llegado [a] cobrar dimensión tal que ha restringido marcadamente el ámbito de libertad de la ciudadanía con grave menoscabo al disfrute de la vida a que tienen perfecto derecho todos los ciudadanos". Exposición de Motivos de la Ley Núm. 34 – 1998 leyes de Puerto Rico 136

Estoy conforme con la Resolución de este Tribunal en el caso de autos en la que denegó la expedición del recurso de *certiorari* presentado por el peticionario. Asimismo, difiero muy respetuosamente del disenso de la minoría por entender que su razonamiento es contrario al estado de derecho. Me veo impedido de avalar una visión de extremo liberalismo

judicial, cuya consecuencia sería extender el beneficio de una pena más favorable a un delincuente habitual, vinculado al narcotráfico.

Esbozamos los antecedentes fácticos pertinentes al recurso ante nuestra consideración.

I

El Ministerio Público presentó contra el Sr. Nelson Negrón Rivera una denuncia por infracción al Artículo 401 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401 *et seq.* (Ley de Sustancias Controladas). Se le imputó al aquí peticionario haber realizado una transacción de venta de sustancias controladas a un agente encubierto el 13 de abril de 2004. Luego de varios incidentes procesales y del acto de lectura de acusación, el Ministerio Fiscal alegó la reincidencia habitual del señor Negrón Rivera ya que había sido convicto y sentenciado en múltiples ocasiones previas. Las convicciones correspondían a siete delitos graves, en su mayoría asociados con la venta, distribución y posesión con la intención de distribuir sustancias controladas.

El juicio en su fondo se celebró el 8 de noviembre de 2006. Culminado el proceso judicial y aquilatada la prueba testifical y documental, el Tribunal de Primera Instancia declaró culpable al peticionario por el delito tipificado en el Artículo 401 de la Ley de Sustancias Controladas, *supra*. Por su extenso historial delictivo, el foro de

primera instancia lo declaró delincuente habitual y lo condenó a la pena de separación permanente de la sociedad, conforme lo disponía el Artículo 62 (c) del Código Penal de 1974 (33 L.P.R.A. sec. 3302 (c)), cuerpo legal vigente al momento de los hechos.

Insatisfecho con el dictamen, el 18 de enero de 2007, el señor Negrón Rivera presentó un recurso de apelación ante el Tribunal de Apelaciones. Sin embargo, el escrito de apelación fue notificado al Tribunal de Primera Instancia el 18 de febrero de 2007, es decir, un mes después de haber interpuesto el recurso de apelación. El señor Negrón Rivera justificó su demora argumentando que inadvertidamente se le quedó la copia para el Tribunal de Instancia en su expediente.[1]

Por otra parte, en su recurso de apelación el señor Negrón Rivera aceptó ser reincidente. Empero, solicitó la aplicación de las disposiciones sobre reincidencia de la Ley de Sustancias Controladas y no las establecidas en el Código Penal. También, arguyó que la pena de separación permanente de la sociedad infringía la cláusula constitucional contra castigos crueles e inusitados.

---

[1] Apéndice del recurso de Apelación, pág. 379. El inciso (a) de la Regla 24 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, establece como requisito de cumplimiento estricto, que la notificación al Tribunal de Instancia de la interposición de un recurso de apelación se deberá efectuar en un periodo máximo de 48 horas. Un tribunal solo tiene discreción para prorrogar un término de cumplimiento estricto cuando se acredite la existencia de justa causa; de lo contrario carece de jurisdicción para expedir el recurso. García Ramis v. Serrallés, 171 D.P.R. 250 (2007); Lugo v. Suárez, 165 D.P.R. 729 (2005).

El foro apelativo intermedio, mediante una Sentencia de 18 de diciembre de 2009, confirmó la sentencia apelada. Determinó que el Artículo 62 del Código Penal de 1974, *supra*, era la disposición aplicable, ya que de su expediente delictivo surgen otros delitos que no están asociados a infracciones a la Ley de Sustancias Controladas, como era el delito de tentativa de recibo y transportación de bienes apropiados ilegalmente. Razonó que la norma de reincidencia en la Ley de Sustancias Controladas aplica con exclusividad cuando todos los delitos previos por los cuales se alegue la reincidencia son también delitos relacionados con las drogas ilícitas. Además, de acuerdo con los precedentes establecidos en Pueblo v. Martínez Ríos, 109 D.P.R. 303, 306 (1979), Pueblo v. Reyes Morán, 123 D.P.R. 786, 797 (1999), y Rummel v. Estelle, 445 U.S. 263 (1980), coligió que no se violentó la cláusula relativa a los castigos crueles e inusitados referida en el caso de autos.

No conforme con el dictamen, el señor Negrón Rivera presentó una moción de reconsideración ante el foro apelativo intermedio. Ese foro mediante resolución de 23 de abril de 2010, declaró "no ha lugar" la solicitud de reconsideración.

Aún inconforme, el 1 de junio de 2010 el señor Negrón Rivera presentó un recurso de *certiorari* ante esta Curia. En su recurso, el peticionario reprodujo las mismas

alegaciones que presentó en su escrito de apelación ante el Tribunal de Apelaciones.

El 3 de diciembre de 2010, la mayoría de este Tribunal emitió una resolución mediante la cual declaró "no ha lugar" al auto de *certiorari* presentado por el señor Negrón Rivera. Igual dictamen se emitió en las mociones de reconsideración que el peticionario presentó ante este Foro. El Juez Presidente Señor Hernández Denton disintió sin opinión escrita, la Jueza Asociada Señora Fiol Matta emitió un voto disidente, al igual que el Juez Asociado Señor Estrella Martínez.

La opinión disidente acogió la teoría del señor Negrón Rivera. Esta aduce que la pena impuesta constituye un castigo cruel e inusitado. Además, la disidencia sostiene que no es de aplicación el inciso (c) del Artículo 62 del Código Penal de 1974, *supra*, por razón de que en Pueblo v. González Ramos, 165 D.P.R. 675 (2005), resolvimos que las limitaciones de la cláusula de reserva al principio de favorabilidad concernían solo a la conducta delictiva y no a las penas dispuestas en el Código Penal actual. A base de esa interpretación, arguye que en relación con las penas, el principio de favorabilidad no está limitado por la cláusula de reserva, es decir, que a las conductas delictivas cometidas vigente el Código Penal de 1974 les aplican las penas del actual Código Penal.

Ante esa desacertada interpretación del Derecho, me veo precisado a intervenir mediante este voto particular.

Específicamente, en cuanto a la interacción entre la cláusula de reserva con el principio de favorabilidad y la errónea interpretación de nuestros pronunciamientos emitidos en Pueblo v. González Ramos, *supra*.

Veamos los fundamentos jurídicos que sostienen nuestro voto de conformidad.

## II

**A. El Principio de favorabilidad en la ley penal, la hermenéutica y la cláusula de reserva**

De ordinario, todos los hechos o las conductas criminales ocurridas a partir de la fecha de vigencia de una nueva ley serán procesados de acuerdo con sus disposiciones. Lo anterior obedece a que de ordinario, las leyes tienen carácter prospectivo, a menos que la Asamblea Legislativa expresamente le imprima carácter retroactivo. Pueblo v. Pizarro Solís, 129, D.P.R. 911, 927 (1992); Pueblo v. Rexach Benítez, 130 D.P.R. 273, 301 (1992). En lo pertinente, el Artículo 8 del actual Código Penal (33 L.P.R.A. sec. 4636) dispone que "la ley penal aplica a hechos realizados durante su vigencia".

Por otra parte, el Artículo 9 del actual Código Penal contempla el principio de favorabilidad. A tales efectos, dispone que "la ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito". 33 L.P.R.A. sec. 4637. Según tal principio, "[s]i durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o a la medida de

seguridad o al modo de ejecutarlas, se aplicará retroactivamente". Íd.

A diferencia de la prohibición de leyes *ex post facto*, el principio de favorabilidad tiene un rango meramente legal; no surge de la Constitución, sino que es puramente de carácter estatuario. En consecuencia, se reconoce la potestad del legislador para establecer excepciones a dicho principio ordenando la aplicación de la ley vigente al momento de la comisión del hecho punible, aunque implique que la ley a ser aplicada sea más desfavorable para el acusado que la ley de origen posterior, vigente al momento de la condena. Por eso, recae en la pura discreción legislativa la aplicación prospectiva o retroactiva de una nueva ley penal en cuanto esta beneficie al acusado. "[L]a aplicación retroactiva de las leyes penales que favorezcan al acusado [queda] dentro de la prerrogativa total del legislador." Pueblo v González Ramos, *supra*, pág. 686

Para reconocer el curso seguido por la autoridad legislativa, es necesario examinar la hermenéutica. Es doctrina arraigada que cuando el lenguaje de una ley es claro y la intención legislativa patente, los tribunales están obligados a respetar la voluntad del legislador. Raimundi v. Productora, 162 D.P.R. 215 (2004). Para ser consecuentes con la intención del legislador, los principios de la hermenéutica penal establecen que los estatutos deben leerse en armonía con el resto del cuerpo legal. Así se evita incurrir en interpretaciones literales

que conduzcan a resultados absurdos, no queridos por el legislador. Pueblo v. Ríos Dávila, 143 D.P.R. 687, 696 (1997).

Asimismo, es norma reiterada que "[p]ara interpretar correctamente una ley, debe buscarse la intención legislativa, no en una frase aislada o en una de sus secciones, sino en el contexto de todo el estatuto, teniendo en cuenta el propósito perseguido por el legislador". Asoc. de Farmacias v. Caribe Specialty, 179 D.P.R. 923 (2010). Véase Pueblo v. De Jesús, 70 D.P.R. 37, 42 (1949). Por consiguiente, los tribunales no pueden disponer lo que el legislador no intentó proveer, porque ello significaría invadir los poderes de la Asamblea Legislativa. Raimundi v. Productora, supra, citando a Alejandro Rivera v. E.L.A., 140 D.P.R. 538, 545 (1996). La exposición de motivos de la ley, los informes de las comisiones y los debates en el hemiciclo, además del texto de la ley son las fuentes de mayor importancia en la tarea de determinar el significado de un acto legislativo. Pérez v. Mun. de Lares, 155 D.P.R. 697, 706-707 (2001). Véase, además, Rexach v. Ramírez, 162 D.P.R. 130, 148-149 (2004).

El actual Código Penal contiene en su Artículo 308 (33 L.P.R.A. sec. 4935) una cláusula de reserva que afecta directamente el principio de favorabilidad estatuido en el Artículo 9 del referido Código, supra, el cual dispone específicamente sobre su efecto retroactivo. Precisamente,

en el ejercicio de su discreción, la Asamblea Legislativa dispuso en el Artículo 308, lo siguiente:

> La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se **regirá por las leyes vigentes al momento del hecho.**
>
> Si este Código suprime algún delito no deberá iniciarse el encauzamiento, las acciones en trámite deberán sobreserse, y las sentencias condenatorias deberán declararse nulas y liberar a la persona. El cambio de nombre de un delito no significa que el tipo delictivo ha quedado suprimido. (Énfasis nuestro.) 33 L.P.R.A. sec. 4935

Como puede notarse, el primer párrafo de este Artículo 308 establece claramente **que la conducta realizada antes de la vigencia del Código se regirá por la ley penal vigente al momento de realizarse tal conducta; es decir, al consumarse el acto considerado delictivo.** Esta es una disposición especial encaminada a que no se aplique retroactivamente el nuevo Código Penal a favor del acusado o de los convictos. Adviértase, pues, que la Asamblea Legislativa pudo haber establecido que la ley aplicable era la que regía al momento en que el acusado fue juzgado y sentenciado. No obstante, estableció claramente que la fecha de la comisión del delito fijaría la ley sustantiva que se aplicaría.

Ahora bien, vale aclarar que el legislador estableció una excepción en el segundo párrafo del referido artículo: si el Código suprimió completamente un delito, no habrá responsabilidad penal aunque la conducta hubiera ocurrido

antes de la vigencia del Código. Esto obedece a principios elementales de política criminal sobre la nueva valoración social de determinadas conductas. Véase Pueblo v. O'Neill Román, 165 D.P.R. 370 (2005).

Por otro lado, del historial legislativo del Artículo 308 del vigente Código Penal, *supra*, surge de manera diáfana que el legislador no deseó darle un alcance retroactivo, como lo considera la opinión disidente. Originalmente, el lenguaje del Artículo 308 del actual Código Penal indicaba:

> La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho. **Sin embargo, todas las disposiciones de este Código le serán aplicables si resultara de dicha aplicación un tratamiento más favorable al imputado o al sentenciado.**

> Si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y liberar a la persona. P. del S. 2302 de 12 de mayo de 2003.

Posteriormente, el legislador decidió eliminar la oración enfatizada del texto del Artículo 308, *supra.* Así, no dispuso que el cuerpo legal del vigente Código Penal tuviese algún efecto retroactivo, con excepción como antes señalamos, de lo dispuesto en el segundo párrafo de esa normativa. Evidentemente, la intención legislativa fue que las disposiciones del referido Artículo 9 del actual Código Penal sólo se aplicarán prospectivamente a partir de su vigencia, lo cual incluso se constata en el Informe sobre

el Proyecto del Senado 2302, de la Comisión de lo Jurídico de 22 de junio de 2003, pág. 67, que expresa sobre dicha cláusula como sigue:

> Esta Comisión acoge la recomendación de la Secretaria de Justicia de que se enmiende el P. del S. 2302 para que en el Art. 309 [finalmente el Art. 308 del Código aprobado] **se elimine la oración "sin embargo, las disposiciones de este Código le serán aplicables si le resultara de dicha aplicación un tratamiento más favorable al imputado o al sentenciado".** La intención del legislador es que este Código aplique a conductas ilícitas cometidas con posterioridad a su vigencia, salvo en cuanto a lo dispuesto en el segundo párrafo de ese artículo para el caso en que este Código suprima algún delito. (Énfasis nuestro.)

Indudablemente, se eliminó del artículo una disposición que hubiera activado en toda su extensión las disposiciones del Artículo 9, *supra* -el principio de favorabilidad- para que los acusados y convictos se beneficien de las disposiciones más benignas del actual Código. Por tal razón, las penas del actual Código tampoco aplican de manera retroactiva.

Como señaláramos, para sostener la aplicación del Artículo 82 del actual Código Penal, en lugar del Artículo 61 del Código Penal de 1974, en tanto y en cuanto el nuevo Código contiene un articulado que aplicado resulta en una pena más benigna que el anterior Código, la opinión disidente hace una distinción en la interpretación del caso Pueblo v. González Ramos, *supra*. No estamos de acuerdo con la interpretación de la opinión disidente. No respaldamos la bifurcación que pretende hacer la disidencia de la

acción delictiva y de la pena a imponerse por el delito cometido.

La decisión en Pueblo v. González Ramos, *supra*, no hace la distinción que pretende hacer la opinión disidente entre el "tipo delictivo" y la "pena" impuesta. La decisión en Pueblo v. González Ramos, *supra*, va dirigida tanto a la acción delictiva como a la pena a imponerse. Al interpretar el texto del primer párrafo del Artículo 308 del Código Penal de 2004, la referida decisión señala:

> Resolvemos, en consecuencia, que la Cláusula de Reserva contenida en el Artículo 308 del Código Penal de 2004, impide que un acusado por hechos delictivos cometidos durante la vigencia del derogado Código Penal de 1974, pueda invocar vía el Artículo 4 del mismo -- las disposiciones del nuevo Código Penal. En virtud de ello, a todos los hechos cometidos bajo la vigencia y en violación de las disposiciones del Código Penal 1974, **les aplicará el referido cuerpo legal en su totalidad**. Ello así, ya que la clara intención legislativa es a los efectos de que el nuevo Código Penal tenga, únicamente, aplicación prospectiva. (Énfasis nuestro.) *Íd.* pág. 139.

Además, si al derogar el antiguo Código Penal la Legislatura deseaba impedir el procesamiento criminal, incluyendo las penas bajo dicho cuerpo legal, estaba en la obligación de así manifestarlo expresamente. Es evidente que no lo hicieron, ya que sus intenciones eran otras; darle una aplicación prospectiva a dicha ley penal y no crear impedimento alguno para procesar criminalmente bajo el anterior Código Penal, a quienes delinquieron durante su vigencia. Véase, Pueblo v. González Ramos, *supra*; Pueblo v. Álvarez Torres, 127 D.P.R. 830 (1991).

Ciertamente la intención legislativa, referente al citado Artículo 308, es clara y patente. Como Tribunal, estamos obligados a respetar la voluntad legislativa. Raimundi v. Productora, supra. Por ende, seria indebido, como Tribunal, que dispusiéramos algo que el legislador no intentó proveer, porque ello significaría una invasión en los poderes conferidos a la Asamblea Legislativa. Véase, Raimundi v. Productora, supra.

En virtud de lo enunciado, es claro que en el caso de autos no aplican las disposiciones del Artículo 82 del actual Código Penal de 2004 (33 L.P.R.A. sec. 4710) a las sentencias dictadas por hechos cometidos con anterioridad a su vigencia. Esto surge de manera evidente del propio historial legislativo del Artículo 308 del Código Penal, *supra*. Como reseñamos, la Asamblea Legislativa decidió eliminar de la cláusula de reserva del actual Código Penal la oración que hacía referencia a la aplicación retroactiva de las disposiciones del Código **si les resultaban más favorables al imputado o sentenciado.** Con ello, queda fuera toda posibilidad de que se aplicara el principio de favorabilidad retroactivamente. Otra interpretación de este precepto obviaría el propósito legislativo.

Las disposiciones del Artículo 9 del actual Código Penal, *supra*, en tanto recoge el principio de favorabilidad a que apunta el señor Negrón Rivera en su recurso, queda modificada en su aplicación por la cláusula de reserva dispuesta en el Artículo 308, *supra*, del referido Código.

Por consiguiente, la aplicación del Artículo 9 es prospectiva; no le aplica retroactivamente al señor Negrón Rivera.

**B. El castigo cruel e inusitado y la reincidencia habitual**

El Artículo 62 (c) del Código Penal de 1974, *supra*, establecía que "[e]n caso de reincidencia habitual el convicto será declarado por el tribunal delincuente habitual y será sentenciado a separación permanente de la sociedad mediante reclusión perpetua".

En Pueblo v. Rodríguez Cabrera, 156 D.P.R. 742, 748 (2002), explicamos el alcance de la figura de la "reincidencia habitual":

> […] la reincidencia habitual se configura cuando se comete cualquiera de los delitos mencionados en el precepto tras antes haber sido convicto y sentenciado por dos o más delitos graves cometidos en tiempos diversos e independientes unos de otros. Así, dicha figura presupone unos delitos bases, los cuales han de haber sido cometidos en tiempos diversos e independientes unos de otros. Por ello, lo determinante para propósitos de la reincidencia habitual es que dichos delitos bases sean producto de episodios criminales distintos y separados, sin que sea imprescindible que sean producto de sentencias emitidas en fechas distintas. (Citas omitidas.)

Por otra parte, la función adjudicativa de la Rama Judicial persigue evitar la imposición de castigos crueles e inusitados, según prohíbe el Artículo II, Sec. 12, de la Constitución de Puerto Rico, L.P.R.A., tomo 1. Pueblo v. Pérez Zayas, 116 D.P.R. 197, 201 (1985). Esta prohibición constitucional protege, entre otras, contra la imposición de penas desproporcionadas y arbitrarias. Brunet Justiniano v. Gobernador, 130 D.P.R. 248, 272 (1992). No obstante, se

ha resuelto reiteradamente que si la pena impuesta está comprendida dentro de los parámetros establecidos en la ley, su imposición no constituye un castigo cruel e inusitado. Pueblo v. Ruiz Bosch, 127 D.P.R. 762, 790 (1991).

Sobre si el castigo por reincidencia habitual es un castigo cruel e inusitado, hemos expresado que la "imposición de una penalidad adicional para quien ha sido convicto en más de dos ocasiones era parte de las prerrogativas constitucionales de la Asamblea Legislativa", Pueblo v. Montero Luciano, 169 D.P.R. 360, 379 (2006), y que ello "no viola la cláusula contra castigos crueles e inusitados". Pueblo v. Reyes Morán, 123 D.P.R. 786, 797 (1989).

En Pueblo v. Reyes Morán, *supra*, puntualizamos que aunque la pena que establece el estatuto relativo a la delincuencia habitual parezca altamente punitiva, el Tribunal Supremo de Estados Unidos validó en el caso Rummell v. Estelle, 445 U.S. 263 (1980), la imposición al convicto de una penalidad de cadena perpetua, según el estatuto de Texas, similar al nuestro. De esta forma reconocimos la validez de la pena que se establece en nuestra jurisdicción para el reincidente habitual.

La reincidencia habitual se conceptualizó para penalizar a aquellos delincuentes que han hecho de la comisión reiterada de actos delictivos, violentos o no, su forma de vida. Basta que la conducta delictiva sea de

naturaleza grave y persistente. Véase Pueblo v. Rodríguez Cabrera, 156 D.P.R. 742 (2002).

En el caso de autos, el señor Negrón Rivera aduce que no se le debe condenar como un delincuente habitual. No le asiste la razón. El señor Negrón Rivera ha sido convicto y sentenciado por la comisión de varios delitos graves, relacionados con la venta y posesión de sustancias controladas. Más aún, vigente el anterior Código Penal volvió a delinquir infringiendo otra vez la Ley de Sustancias Controladas. Se le encontró culpable y conforme a las disposiciones de ley penal vigente al momento de los hechos, se le imputó ser un delincuente habitual. Esos hechos son incontrovertibles. Igualmente, a la fecha cuando el señor Negrón Rivera decidió cometer sus crímenes, el Artículo 62 (c) informaba a toda la sociedad que la persona convicta y sentenciada por dos o más delitos cometidos en tiempos diversos e independientes unos de otros, y cometiese posteriormente delitos tales como violaciones a ley de sustancias controladas sería sentenciado como delincuente habitual. En atención a ello, el juez del foro primario sentenció al señor Negrón Rivera conforme al estado de derecho correcto.

Aclaramos, que aquellos convictos y sentenciados bajo el antiguo Artículo 62 (c) no fueron condenados por una disposición que infringe la cláusula constitucional contra castigos crueles e inusitados. La derogación de una ley o alguna de sus disposiciones no significa que haya algún

vicio de inconstitucionalidad en la normativa derogada. La condena al señor Negrón Rivera es legítima y producto de sus propios actos.

### III

El señor Negrón Rivera no es un primer ofensor o un adicto a las sustancias controladas que necesite un tratamiento para su enfermedad, como pretende señalar la opinión disidente. Más bien, es quien inescrupulosamente vende la droga, el veneno, a los adictos; delito grave que ha cometido en infinidad de ocasiones. Recalcamos, que la venta de estupefacientes arropa la isla. Día tras día observamos por los medios de difusión cuántos jóvenes, niños inocentes y buenos ciudadanos mueren como consecuencia de la guerra sin cuartel por el control de los llamados "puntos de drogas". De ninguna manera este asunto debe tratarse livianamente y con guantes de seda, como si se tratara de una conducta insignificante.

Es evidente que el largo historial delictivo del señor Negrón Rivera revela que este ha hecho del crimen y del narcotráfico su forma de vida. En más de siete ocasiones ha sido convicto de delitos graves y no ha tratado de rehabilitarse. El inciso (c) del Artículo 62 del Código Penal de 1974, *supra*, igual al inciso (c) del Artículo 81 del Código Penal vigente, 33 L.P.R.A. sec. 4709, tienen el objetivo de proteger a nuestra sociedad de esta clase de delincuentes, que por sus acciones recurrentes muestran un

claro rechazo a la rehabilitación y un total menosprecio a la vida y a la seguridad de nuestro Pueblo.

Por los fundamentos que preceden, estamos conformes con la Resolución emitida por el Tribunal mediante la cual se deniega expedir el auto de *certiorari*.


                              Edgardo Rivera García
                                 Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
      Recurrido

v.

Nelson Negrón Rivera
      Peticionario

*Certiorari*

CC-2010-463

Voto particular disidente emitido por la Jueza Asociada señora FIOL MATTA al cual se une el Juez Presidente señor HERNÁNDEZ DENTON

En San Juan, Puerto Rico, a 28 de octubre de 2011.

El 13 de abril de 2004, el señor Negrón Rivera participó en una venta de siete bolsitas de cocaína a un agente encubierto. El Ministerio Público le imputó haber cometido el delito grave de posesión con intención de distribuir sustancias controladas, tipificado en el artículo 401 de la Ley de Sustancias Controladas.[2] En la acusación, además, se le imputó reincidencia por haber sido sentenciado en dos ocasiones anteriores, una por

---

[2] Art. 401(a)(2), Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2401. *Véase* Denuncia presentada el 11 de mayo de 2004, Apéndice del Certiorari, pág. 431.

seis cargos de posesión de narcóticos bajo la Ley de Sustancias Controladas y otra bajo el Código Penal, por tentativa de recibo y transportación de bienes apropiados ilegalmente.[3] Posteriormente, el Tribunal de Primera Instancia autorizó que se especificara que se trataba de reincidencia habitual.[4]

El juicio comenzó el 24 de agosto de 2006. Ese día, se presentó toda la prueba y se ordenó el traslado de los expedientes de los casos anteriores por los que se alegaba la reincidencia.[5] El Tribunal recibió los récords para la vista del 8 de noviembre de 2006. El acusado aceptó que los expedientes eran suyos y se le declaró culpable.[6] El 22 de diciembre de 2006, la defensa renunció al informe pre-sentencia y el Tribunal declaró delincuente habitual a

---

[3] La parte de la acusación sobre la reincidencia lee: "Alega además el fiscal la reincidencia del acusado Nelson Negrón Rivera, el cual ha sido convicto y sentenciado por este Honorable Tribunal en los casos JPD1999G0631 – por tent. art. 168, JSC19940262, JSC1994G0263, JSC1994G0278, JSC1994G0279, JSC1994G0280, JSC1994G0281 por sustancias controladas. Sentencia final y firme". Acusación presentada el 4 de enero de 2006, Apéndice del Certiorari, pág. 410. El delito de tentativa de recibo y transportación de bienes apropiados ilegalmente por el que fue sentenciado a un año de cárcel en el 2000 se encontraba en el artículo 168 del Código Penal de 1974, mientras que los cargos por violación a la Ley de Sustancias Controladas se referían a que se declaró culpable por posesión de drogas bajo el artículo 404 en el 1994 y fue sentenciado a cuatro años de reclusión en el 1995.

[4] *Véase* Acta del 16 de marzo de 2006, Apéndice del Certiorari, pág. 403.

[5] *Véase* Acta del 24 de agosto de 2006, Apéndice del Certiorari, págs. 393-394.

[6] *Véase* Acta del 8 de noviembre de 2006, Apéndice del Certiorari, págs. 389(A)-389(C).

Negrón Rivera. Lo sentenció a separación permanente de la sociedad mediante reclusión perpetua en una cárcel de máxima seguridad, según dictaba el Código Penal de 1974 para personas convictas por dos o más delitos graves independientes que reincidieran cometiendo una de las violaciones especificadas, entre las cuales se incluía el artículo 401 de la Ley de Sustancias Controladas.[7]

Negrón Rivera apeló el 19 de enero de 2007. Alegó que el foro de instancia erró al imponer la pena de separación permanente de la sociedad en vez de la reclusión por 35 años dispuesta para reincidencia en la Ley de Sustancias Controladas y que la pena impuesta viola la prohibición constitucional de castigos crueles e inusitados por no ser proporcional a los delitos cometidos.[8] El Tribunal de Apelaciones concluyó que fue correcta la sentencia de reincidencia según el Código Penal de 1974, porque no todas las convicciones previas eran por violación a la Ley de Sustancias Controladas. El Tribunal entendió que eso excluía la aplicación de la disposición de reincidencia de dicha ley, de acuerdo con *Pueblo v. Ramos Rivas*, 171 D.P.R.

---

[7] Arts. 61-62, Código Penal de 1974, 33 L.P.R.A. secs. 3301-3302 (derogadas). *Véase* Acta del 22 de diciembre de 2006, Apéndice del Certiorari, pág. 388.

[8] Arts. 401 y 414, Ley de Sustancias Controladas, 24 L.P.R.A. secs. 2401 y 2413; Art. II sec. 12, Const. P.R. *Véanse* Escrito de Apelación de 18 de enero de 2007, Apéndice del Certiorari, págs. 383-386; Alegato del Apelante ante el Tribunal de Apelaciones de 24 de septiembre de 2007, Apéndice del Certiorari, págs. 297-338. En sus escritos, también incluyó como error que se le encontrara culpable, alegando insuficiencia de la prueba e identificación viciada.

826 (2007). Asimismo, determinó que la disposición de reincidencia aplicable fue determinada por prerrogativa legislativa, por lo que no debía calificarse como un castigo cruel e inusitado.[9] Uno de los jueces del panel apelativo disintió, pues entendió que aplicaba la reincidencia bajo la Ley de Sustancias Controladas ya que el antecedente de tentativa de transportación de bienes hurtados bajo el Código Penal estaba relacionado con la necesidad de Negrón Rivera de conseguir dinero para satisfacer su adicción a drogas. Además, explicó que el castigo impuesto no guarda proporción con los delitos cometidos, por lo que no debía aplicarse automáticamente sin estudiar las circunstancias específicas que la Legislatura no tuvo ante su consideración.[10] El Tribunal de Apelaciones también denegó una solicitud de reconsideración.[11]

---

[9] Pueblo v. Negrón Rivera, Sentencia KLAN20070088, 18 de diciembre de 2009, Apéndice del Certiorari, págs. 52-86. En *Pueblo v. Ramos Rivas*, 171 D.P.R. 826, 839 (2007), señalamos que "la disposición de reincidencia del Art. 401 de la Ley de Sustancias Controladas aplica con exclusividad cuando todos los delitos previos por los cuales se alegue la reincidencia sean delitos graves según esta ley o cualquier ley de Estados Unidos relacionada con drogas narcóticas, desplazando, en virtud del principio de especialidad, las disposiciones de reincidencia del Código Penal".

[10] Pueblo v. Negrón Rivera, Sentencia KLAN20070088, Opinión disidente del juez González Vargas, 18 de diciembre de 2009, Apéndice del Certiorari, págs. 45-51. El juez entendió que aplicar la pena de separación permanente a este acusado violaba disposiciones constitucionales.

[11] Resolución de 23 de abril de 2010, Apéndice del Certiorari, págs. 12-16, con voto explicativo del juez González Vargas, Apéndice del Certiorari, págs. 1-11.

El 1 de junio de 2010, Negrón Rivera recurrió ante este Tribunal. Nuevamente, uno de los errores que planteó fue que la pena de separación permanente de la sociedad es excesiva.[12] El 3 de diciembre de 2010, denegamos su solicitud de certiorari.[13] También denegamos una primera moción de reconsideración, el 4 de febrero de 2011.[14] Una vez más, el peticionario nos pidió que modificáramos la pena impuesta y argumentó que, al momento de ser sentenciado, ya la Legislatura había atenuado la pena por reincidencia habitual, mediante la eliminación de la pena de separación permanente en el Código Penal de 2004, por lo que ningún ciudadano podía ser condenado a pasar el resto de su vida encarcelado.[15] Luego de evaluar su segunda solicitud de reconsideración, el 4 de marzo de 2011 ordenamos a la Procuradora General mostrar causa por la

---

[12] Petición de Certiorari ante el Tribunal Supremo, CC-10-463, págs. 40-43. En su escrito, incluyó otros tres errores que no atenderemos: insuficiencia de la prueba para rebatir la presunción de inocencia, violación al principio de especialidad al no aplicar la disposición de reincidencia de la Ley de Sustancias Controladas y falta de notificación adecuada de los cargos porque la reincidencia habitual no se alegó expresamente en el pliego acusatorio.

[13] El juez Hernández Denton y la jueza Fiol Matta hicieron constar que expedirían.

[14] El juez Hernández Denton y la jueza Fiol Matta hicieron constar que reconsiderarían.

[15] Segunda solicitud de reconsideración ante el Tribunal Supremo, 11 de febrero de 2011.

cual no debíamos modificar la pena por reincidencia habitual impuesta al peticionario.[16]

La Procuradora presentó su oposición el 2 de mayo de 2011. En ésta, reitera todos sus argumentos en cuanto a los errores sobre los que el peticionario solicitó revisión originalmente. Sobre la posibilidad de aplicar la pena de reincidencia habitual más benigna que establece el Código Penal de 2004 en lugar de la del Código Penal de 1974 sólo menciona que el peticionario lo alegó de forma muy escueta, pero no provee razones para no emplearla.[17] Por su parte, el peticionario presentó su réplica el 12 de mayo de 2011, en la que insistió en que, cuando lo sentenciaron, la valoración de la pena por reincidencia habitual ya había cambiado. Tras estudiar los argumentos de ambas partes, una mayoría de los jueces y las juezas de este Tribunal ha decidido no expedir el auto. Respetuosamente, disiento.

El principio de favorabilidad establece que las leyes penales se aplican de forma retroactiva en lo que

---

[16] Aunque el peticionario pidió reconsideración respecto a tres errores, emitimos una orden de mostrar causa únicamente respecto a la pena impuesta por reincidencia habitual.

[17] La mención se encuentra en la nota al calce 40, en la página 44 del Escrito para Mostrar Causa. La Procuradora indica que "si el peticionario interesa hacer algún planteamiento en cuanto a su eventual elegibilidad para disfrutar de una libertad bajo palabra, a la luz del principio de favorabilidad, éste deberá plantearlo y discutirlo ante los foros pertinentes, en el momento apropiado", y añade que esa controversia aún no ha madurado. Entendemos que, dado que el peticionario se encuentra cumpliendo su condena de reclusión, no hay razón para posponer la consideración de su planteamiento sobre la pena que debe cumplir.

beneficien a las personas imputadas de delito. Ello implica que, cuando la ley vigente al cometerse el delito y la vigente al imponerse la sentencia son distintas, siempre se aplica el estatuto más benigno para el acusado.[18] Incluso, si la persona ya está cumpliendo la sentencia y entra en vigor una ley con una pena o un modo de ejecutarla que es menos severa que aquella bajo la cual se le sentenció, se le debe aplicar la más favorecedora.[19] Por ser un principio general, esta regla beneficia a las personas acusadas o convictas de todo tipo de delitos, sin distinción alguna. De esta forma, nuestro ordenamiento permite, como excepción a las normas generales de que la ley penal aplicable es la que estaba vigente al cometerse el delito y de la irretroactividad de la ley nueva, que las personas acusadas o convictas se puedan beneficiar de leyes más benignas promulgadas en tiempo posterior a los hechos punibles.[20]

---

[18] Art. 9(a), Código Penal de 2004, 33 L.P.R.A. sec. 4637. El principio de favorabilidad también estaba codificado en el Código Penal de 1974, en el artículo 4, 33 L.P.R.A. sec. 3004 (derogada). Sobre aplicación retroactiva, *véase también* Pueblo v. Thompson Faberllé, 2010 T.S.P.R. 237.

[19] Art. 9(b), Código Penal de 2004, 33 L.P.R.A. sec. 4637.

[20] D. Nevares Muñiz, Derecho Penal Puertorriqueño - Parte General, 5ta ed., San Juan, Instituto para el Desarrollo del Derecho, 2005, págs. 100-108. El principio de favorabilidad del Derecho Penal moderno ha sido adoptado como máxima en el Derecho Internacional y las disposiciones sobre derechos humanos, pues favorece la rehabilitación de los transgresores. *Véanse, por ejemplo*: Art. 15.1, Pacto Internacional de Derechos Civiles y Políticos (ONU, Nueva York, 1966); Art. 9, Convención Americana sobre Derechos Humanos (OEA, San José, 1969).

El fundamento del principio de favorabilidad en nuestro Derecho Penal, según explica el profesor Luis Ernesto Chiesa, es que *sería irracional y arbitrario imponer una pena que al momento de la sentencia se considera inadecuada* porque las expresiones legislativas más recientes manifiestan que cierto castigo es excesivo para la gravedad del hecho. En otras palabras, si la valoración jurídica de la conducta ha cambiado de modo que se han atenuado sus consecuencias, lo justo es aplicar esa nueva visión a los hechos cometidos antes del cambio, pues *no tiene sentido que los ciudadanos sigan padeciendo los efectos de leyes que en la actualidad se entienden demasiado rigurosas.*[21]

Por otro lado, según el artículo 308 del Código Penal de 2004, la conducta antijurídica que se haya realizado antes de la vigencia del Código de 2004 se rige por la ley penal que estuviese vigente al momento de los hechos.[22] Esta cláusula de reserva parcial pretende que los actos punibles cometidos bajo el Código de 1974 derogado o las leyes penales especiales aplicables cuando se cometió la conducta, que no hayan sido suprimidos por el Código de 2004, sean juzgados según la tipificación en vigor al

---

[21] L.E. Chiesa Aponte, Derecho Penal Sustantivo, San Juan, Publicaciones JTS, 2007, págs. 54-55. *Véase también*, E.L. Chiesa Aponte y L.E. Chiesa Aponte, Derecho Penal, 73 Rev. Jur. UPR 671, 689-695 (2004).

[22] Art. 308, Código Penal de 2004, 33 L.P.R.A. sec. 4935.

tiempo en que ocurrieron.[23] A base de ello, en *Pueblo v. González Ramos*, 165 D.P.R. 675, 705 (2005), indicamos que la Legislatura decidió mantener la aplicabilidad del Código de 1974 para juzgar los delitos cometidos durante su vigencia.

No obstante, vale aclarar que en ese caso nos limitamos a estudiar el artículo 308 *en cuanto a la tipificación de delitos* y no lo evaluamos en el ámbito de las consecuencias de la aplicación de la ley penal, es decir, de las penas. En *Pueblo v. González Ramos*, determinamos que el asesinato estatutario tipificado en el Código Penal de 1974 no fue suprimido en el Código de 2004, y que, de acuerdo a la cláusula de reserva del Código de 2004, procedía juzgar al acusado según el delito tipificado en el Código de 1974, que estaba vigente al momento de los hechos delictivos. Aunque nos expresamos en términos generales sobre la aplicación retroactiva de la ley penal más benigna y las cláusulas de reserva como límites al principio de favorabilidad, el análisis estuvo centrado en el efecto de la cláusula de reserva del Código Penal de 2004 *sobre la conducta* que se considera delictiva.

En efecto, debemos distinguir entre la punibilidad y la penalidad al analizar el axioma de aplicar la ley penal más benigna en conjunto con la cláusula de reserva. El análisis de las sanciones por la comisión de la conducta

[23] D. Nevares Muñiz, Nuevo Código Penal de Puerto Rico, 2da ed., San Juan, Instituto para el Desarrollo del Derecho, 2005, págs. 10-12 y 397.

punible tiene que ser distinto al que se refiere a los elementos constitutivos del delito o de los supuestos de hechos que deseamos prevenir. La razón es evidente: cada uno de estos componentes de la norma penal considera factores diferentes.[24]

Si leemos detenidamente la cláusula de reserva del Código Penal de 2004, podemos notar que está totalmente dirigida a la tipicidad y no menciona las penas. El artículo 308 enuncia:

> La *conducta* realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado [1974] o de cualquier otra ley de carácter penal se regirá por las leyes vigentes al momento del hecho. Si este Código suprime *algún delito*, no deberá iniciarse el encauzamiento, las acciones en trámite deberán sobreseerse y las sentencias condenatorias deberán declararse nulas y liberar a la persona. El cambio de *nombre de un delito* no significa que el *tipo delictivo* ha quedado suprimido.[25]

Esta redacción se distingue de la que se usó en la cláusula de reserva del Código de 1974. Ésta incluía expresamente las sanciones entre los elementos que debían atenderse de acuerdo al Código Penal anterior, al referirse al castigo del hecho cometido, en los siguientes términos: "La promulgación de este Código [1974] no constituye impedimento para acusar o perseguir *y castigar* un hecho ya cometido en violación a las disposiciones del Código Penal

---

[24] *Véase* F. Muñoz Conde y M. García Arán, <u>Derecho Penal – Parte General</u>, 6ta ed., Valencia, Ed. Tirant Lo Blanch, 2004, págs. 33-65.

[25] (Énfasis suplido). 33 L.P.R.A. sec. 4935.

aquí derogado [1937] o de cualquier otra ley especial de carácter penal".[26]

Distinto al Código de 1974, el de 2004 permite la aplicación retroactiva de las penas y medidas de seguridad más favorables. Por eso, podemos razonar que la intención legislativa al aprobar el Código actual fue que se juzgaran los delitos cometidos bajo el Código anterior según las disposiciones de ese cuerpo, pero que se aplicaran las penas más benignas del nuevo Código para evitar un desfase entre las sentencias y la valorización social de las conductas al presente.[27]

El profesor Antonio Bascuñán, en un estudio detallado sobre el desarrollo del principio de favorabilidad en Puerto Rico, explica que este Tribunal, al interpretar las cláusulas de reserva de modo que la consecuencia para el acusado sea razonable, se ha basado en la necesidad de que las penas impuestas sean cónsonas con la valoración que les asigna la Legislatura en el momento actual.[28] Igualmente, el autor señala que la jurisprudencia norteamericana muestra

---

[26] (Énfasis suplido). Art. 281, Código Penal de 1974, 33 L.P.R.A. sec. 4625 (derogada).

[27] *Véase* Voto disidente de la jueza Fiol Matta en Pueblo v. Padín Rodríguez, 169 D.P.R. 521, 521-531 (2006).

[28] A. Bascuñán Rodríguez, La aplicación de la ley penal más favorable, 69 Rev. Jur. UPR 29, 65-66 (2000). Véase también la discusión de la profesora Nevares Muñiz sobre casos en los que este Tribunal ha aplicado retroactivamente leyes posteriores más favorables a los acusados, independientemente de la cláusula de reserva. Nevares Muñiz, Derecho Penal Puertorriqueño, *op. cit.*, a las págs. 109-110, citando: Pueblo v. Caballero Rodríguez, 109 D.P.R. 126 (1979); Pueblo v. Malavé, 61 D.P.R. 403 (1943); Pueblo v. Otero, 61 D.P.R. 36 (1942).

descontento con concebir las cláusulas de reserva como mandatos genéricos y absolutos.[29] Indica que, dado que la formulación de las cláusulas de reserva suele ser formal y abstracta, su aplicación irrestricta puede llevar al "absurdo político-criminal de tener que imponer una pena aunque al momento de la condena la ley haya expresado abiertamente su falta de necesidad".[30]

Cabe recordar, según explicamos en *Pueblo v. González Ramos*, que la interpretación de las cláusulas de reserva del Código Penal de 1974 en nuestra jurisprudencia fue conflictiva.[31] Hubo casos en los que aplicamos la ley penal más favorable, aunque fuera, según señala Bascuñán, "en abierta infracción del tenor literal de las cláusulas de reserva".[32] La explicación, según este autor, era que en esos casos "la razonabilidad político-criminal se encontraba del campo contrario a dichas cláusulas: lo razonable era evitar el exceso".[33] Pero, más allá de las

---

[29] Bascuñán Rodríguez, *supra*, a las págs. 122-123.

[30] *Íd.* a la pág. 56.

[31] Pueblo v. González Ramos, *supra*, a la pág. 702.

[32] Bascuñán Rodríguez, *supra*, a la pág. 69.

[33] *Íd. Véase también* Luis Rivera Román, El nuevo Código Penal: su vigencia y el debate entre la aplicación de la ley más benigna y las cláusulas de reserva, 40 Rev. Jur. UIPR 41 (2005). En ese artículo se repasan los argumentos respecto al principio de favorabilidad que se estuvieron presentando en los tribunales de primera instancia durante los primeros meses de vigencia del Código Penal de 2004 y se concluye que se debe reconocer el valor jurídico de dicho principio, pues "el Código Penal de 2004 culmina un desarrollo histórico que concede a un imputado toda ley más benigna, la aplica en su mayor amplitud y a favor de

consideraciones de justicia y razonabilidad que se encontraran presentes en esos casos, debemos tener en cuenta un detalle importante: el Código de 1974 disponía que el principio de favorabilidad aplicaría sólo prospectivamente.[34] Ese mandato legislativo fue el que causó las aparentes contradicciones en los casos que se discuten en *Pueblo v. González Ramos*.[35] El Código de 2004 no contiene una disposición similar.

Más aun, debemos resaltar que, independientemente de la interpretación que se hiciera de la cláusula de reserva que prohibía la aplicación retroactiva del principio de favorabilidad, éste se aplicó de la misma manera en todos los casos citados: "lo decisivo al determinar la aplicación de la ley era la fecha en que fue dictada la sentencia del

---

personas que han sido sentenciadas". *Id.* a la pág. 67. Asimismo, señala que "el más simple sentido de justicia" y "una nueva valorativa social a una conducta criminal" deben ser fundamentos suficientes para aplicar una ley más benigna en todos los casos pendientes de adjudicación. *Id.*

[34] Art. 282, Código Penal de 1974, 33 L.P.R.A. sec. 4626 (derogada).

[35] Pueblo v. González Ramos, *supra*, a las págs. 699-702. Los casos discutidos son: Pueblo v. Villafañe, Contreras, 142 D.P.R. 839 (1997); Pueblo v. Moreno Morales I, 132 D.P.R. 261 (1992); Pueblo v. Caballero Rodríguez, *supra*, y Pueblo v. Rosso Vázquez, 105 D.P.R. 905 (1977). En *Pueblo v. Moreno Morales I*, la decisión de no aplicar una ley penal más benigna no se basó en el principio de favorabilidad y las cláusulas de reserva que establecía el Código Penal de 1974. Se debió a que la ley que el convicto pidió que se empleara establecía expresamente que sus disposiciones sólo aplicarían a personas juzgadas por hechos cometidos a partir de la vigencia de esa ley y el delito se cometió antes. Pueblo v. Moreno Morales I, *supra*, a la pág. 289.

tribunal de instancia".[36] Así, en *Pueblo v. Caballero Rodríguez*, este Tribunal declaró que "[a]unque los hechos y el juicio tuvieron lugar durante la vigencia del anterior Código Penal, *la sentencia se dictó el 4 de febrero de 1975, estando ya en vigor el presente Código Penal*",[37] y analizó las instrucciones al jurado a la luz de la disposición más favorable del Código de 1974. Asimismo, en *Pueblo v. Rosso Vázquez*, el Tribunal aclaró que no reduciría la pena según las disposiciones más benignas del nuevo cuerpo de ley, porque el principio de favorabilidad aplicaba con carácter prospectivo y *la sentencia se impuso antes de que entrara en vigor el Código Penal de 1974.*[38] Este desarrollo implica que lo decisivo para determinar si el acusado puede beneficiarse de una ley más favorable al

---

[36] Pueblo v. González Ramos, *supra*, a la pág. 701, esc. 21, resumiendo Pueblo v. Villafañe, Contreras, *supra*. En *Pueblo v. Villafañe, Contreras*, el juez Rebollo López emitió una Opinión disidente en la cual criticó que se ignorara el principio de favorabilidad, con el efecto de castigar una conducta que ya no se consideraba delictiva. *Íd.* a las págs. 849-857.

[37] (Énfasis suplido.) Pueblo v. Caballero Rodríguez, *supra*, a la pág. 128.

[38] Pueblo v. Rosso Vázquez, *supra*, a las págs. 910-911. Además de considerar la fecha en que se dictó la sentencia, el Tribunal indicó que "las circunstancias repugnantes" del caso, en que un policía violó a una joven, "no nos mueven a intervenir con la penalidad". *Íd.* a la pág. 911. Mientras, cuatro de los ocho jueces que componían el Tribunal en ese momento disintieron de la decisión de no modificar la sentencia de acuerdo con el nuevo Código Penal para que la misma fuera de un máximo de 25 años en lugar de ser una de hasta 50 años. Fundamentaron su disenso en la importancia de promover la rehabilitación de los confinados a través del sistema correccional y de poner en vigor el axioma de vanguardia que representa el principio de favorabilidad. *Íd.* a las págs. 912-914.

ser sentenciado *no es la fecha en que se cometieron los hechos sino la fecha en que se dicta la sentencia.*

En el presente caso, los hechos se cometieron en abril de 2004, cuando todavía estaba vigente el Código Penal de 1974, por lo que se juzgó al acusado según los delitos tipificados en ese Código.[39] No obstante, *la sentencia se dictó en diciembre de 2006, cuando ya regía el Código Penal de 2004*, por lo que la pena se debía fijar según lo establecido en esa legislación, de ser ésta más benigna. Sin embargo, al acusado se le impuso incorrectamente la pena dispuesta por el Código de 1974, que es más severa que la del Código de 2004 que se le debía aplicar.

En su análisis sobre la concepción de la pena por reincidencia habitual en ambos cuerpos de ley, la profesora Dora Nevares Muñiz explica que la reincidencia habitual bajo el Código de 1974 era tan rigurosa que violaba el principio de proporcionalidad dictado por la cláusula constitucional contra castigos crueles e inusitados, pues conllevaba prisión perpetua y prohibía participar en programas de rehabilitación así como cualificar para libertad bajo palabra.[40] El Código de 2004, en lugar de

---

[39] El Código Penal de 2004 comenzó a regir el 1 de mayo de 2005. Art. 314, Código Penal de 2004, Ley Núm. 149 de 18 de junio de 2004. El propósito principal de la reforma del Código Penal fue revisar las penas que establecían el Código de 1974 y las leyes penales especiales. *Íd.*, Exposición de Motivos del Código Penal de 2004.

[40] D. Nevares Muñiz, Las penas en el nuevo Código Penal: a cinco años de su vigencia, 79 Rev. Jur. UPR 1129, 1154-1155 (2010). *Véase también* D. Nevares Muñiz, Evaluación del Modelo de Penas – Revisión del Código Penal, Comisión de lo

ordenar la reclusión permanente del reincidente, le impone una condena de 99 años, igual que a los delitos graves de primer grado.[41] La persona así sentenciada tiene acceso a programas de rehabilitación y puede ser considerada para libertad bajo palabra.[42]

La Ley 316 de 2004, que enmendó la Ley Orgánica de la Junta de Libertad Bajo Palabra de 1974 para atemperarla al Código Penal de 2004, dispuso que cualquier persona convicta que se haya declarado reincidente habitual puede ser considerada para libertad bajo palabra al cumplir 25 años naturales de su sentencia, beneficio del que estaban excluidos los reincidentes habituales anteriormente.[43]

---

Jurídico del Senado de Puerto Rico, 9 de abril de 2002, pág. 18, http://www.ramajudicial.pr/CodigoPenal/acrobat/04-Evaluacion-del-Modelo-de-Penas.pdf. Sobre las teorías acerca de las penas por reincidencia habitual, *véase*, *además*: A. Von Hirsch, Doing Justice: The Choice of Punishments, New York, Ed. Hill and Wang, 1976, págs. 84-94. Este autor explica que, al imponer un castigo por ser reincidente, no sólo se debe considerar la cantidad de veces en que la persona delinquió sino también la seriedad de las ofensas cometidas.

[41] Art. 81(c), Código Penal de 2004, 33 L.P.R.A. sec. 4709(c). Al igual que el Código de 1974, el de 2004 dispone el grado de reincidencia habitual cuando la persona ha sido convicta anteriormente por dos o más delitos graves independientes y comete otro delito grave en violación de las disposiciones enumeradas, que incluyen el artículo 401 de la Ley de Sustancias Controladas. Las normas para la determinación de reincidencia bajo el Código de 2004 se encuentran en su artículo 82, 33 L.P.R.A. sec. 4710.

[42] *Véase* R.N. Bell Bayrón, La significativa aportación al compromiso con la rehabilitación del sentenciado de la reforma penal de 2004 y de la Ley del Mandato Constitucional de Rehabilitación, 40 Rev. Jur. UIPR 1 (2005).

[43] Art. 3(a)(1), Ley Orgánica de la Junta de Libertad Bajo Palabra, Ley Núm. 118 de 22 de julio de 1974 según

Asimismo, según la Ley de Mandato Constitucional de Rehabilitación de 2004, el reincidente habitual que cualifique para libertad bajo palabra podrá ser evaluado con el fin de determinar si está capacitado para convivir libremente en la sociedad sin que ello manifieste peligrosidad y, si el Departamento de Corrección certifica su rehabilitación, el tribunal podrá considerar la posibilidad de dar por cumplida la pena restante.[44] El artículo 104 del Código Penal de 2004 también provee para la certificación de rehabilitación del recluso.[45] Estas diferencias se deben a que, con la reforma del Código Penal en el 2004, se buscó atemperar las penas para que respondieran a la severidad de los delitos y no constituyeran castigos perpetuos.[46]

---

enmendada por la Ley Núm. 316 de 15 de septiembre de 2004, 4 L.P.R.A. sec. 1503. Para otros ejemplos sobre la exclusión de los delincuentes habituales de beneficios para su rehabilitación y reinserción en la sociedad bajo el Código Penal de 1974, *véase* Pueblo v. Pizarro Solís, 129 D.P.R. 911 (1992).

[44] Art. 7, Ley de Mandato Constitucional de Rehabilitación, Ley Núm. 377 de 16 de septiembre de 2004, según enmendada por la Ley Núm. 165 de 16 de diciembre de 2009, 4 L.P.R.A. sec. 1615. *Véase también* A. Sánchez Galindo, El derecho a la readaptación social, Buenos Aires, Ed. Depalma, 1983.

[45] Art. 104, Código Penal de 2004, 33 L.P.R.A. sec. 4732. La rehabilitación del sentenciado es una de las causas de extinción de la pena. Art. 103, Código Penal de 2004, 33 L.P.R.A. sec. 4731.

[46] *Véase* Nevares Muñiz, Las penas en el nuevo Código Penal, *supra*, a las págs. 1131-1141 y 1160-1161. *Véase también* J. Cid Moliné, ¿Pena justa o pena útil?, Madrid, Centro de Publicaciones del Ministerio de Justicia, 1994.

Por lo tanto, procedía corregir la sentencia dictada en este caso para modificar la pena según el Código Penal de 2004.[47] De esa manera, la sanción impuesta correspondería a la valoración legislativa actual de la consecuencia jurídica de la reincidencia habitual y a nuestra política constitucional de promover la rehabilitación y la resocialización de los confinados.[48] Así también, se propendería a que la pena guarde mayor proporcionalidad con los delitos cometidos.[49]

El resultado de la aplicación lógica del principio de favorabilidad, en conjunción con la cláusula de reserva parcial del Código Penal de 2004 y con el fin de rehabilitación que recogen nuestra Constitución, nuestras leyes y nuestra jurisprudencia, no es ni remotamente la impunidad. El señor Negrón Rivera cumpliría una pena de 99 años naturales por haber mantenido una conducta delictiva durante varios años. La diferencia al sentenciarlo según el Código de 2004 vigente es que, cuando haya cumplido 25 años naturales de su condena, tendrá la oportunidad de solicitar salir de la cárcel con libertad bajo palabra. Esa opción, que no se le otorgará automáticamente sino que se le podría brindar después de evaluar si todavía representa un peligro

---

[47] *Véase* Regla 213 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 213.

[48] Art. VI sec. 19, Const. P.R.; Ley de Mandato Constitucional de Rehabilitación, 4 L.P.R.A. secs. 1611-1616; Art. 50, Código Penal de 2004, 33 L.P.R.A. sec. 4678.

[49] Pueblo v. Pérez Zayas, 116 D.P.R. 197, 201-202 (1985).

para la sociedad, es la que puede motivarlo a superar su adicción y a aprovechar el tiempo de su encarcelación para desarrollar alguna habilidad que le permita ser productivo cuando regrese a la libre comunidad. Si le negamos esa oportunidad, nada de lo que haga dentro de la prisión tendrá propósito. ¿Qué incentivo para rehabilitarse va a tener esta persona? ¿Qué gana el País con mantener encerrado por el resto de su vida, en una prisión de máxima seguridad, a expensas del erario, a un joven que cayó en el vicio de las drogas?

La pena de separación permanente de la sociedad que se le impuso al señor Negrón Rivera es, a todas luces, excesiva. No sólo es contraria a las disposiciones legislativas vigentes, sino que derrota nuestra política pública de permitir y promover la rehabilitación. No puedo estar de acuerdo.

Al señor Negrón Rivera, y a las personas acusadas en su misma posición, sólo les quedará la esperanza de que la Asamblea Legislativa aclare el alcance del artículo 308 del Código Penal de 2004. Sólo así se podrá hacer valer la prohibición de penas desproporcionadas a los delitos cometidos que estipula nuestra Constitución y se le dará eficacia al principio de favorabilidad que impera en los sistemas penalistas modernos, como esperamos que sea el de Puerto Rico.

Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                     CC-2010-463     Certiorari

Nelson Negrón Rivera

    Peticionario

Voto Disidente emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ al cual se unen el Juez Presidente SEÑOR HERNÁNDEZ DENTON y el Juez Asociado SEÑOR KOLTHOFF CARABALLO

San Juan, Puerto Rico, a 28 de octubre de 2011.

Por considerar que debemos evaluar en su totalidad el historial legislativo y que la codificación final elegida por el legislador para preservar el principio de favorabilidad en el Código Penal no puede ser derrotada por una interpretación ceñida exclusivamente a otro articulado de dicha pieza legislativa, disiento respetuosamente.

El presente caso nos permite armonizar por primera vez el Art. 9 y el Art. 308 del Código Penal de 2004 respecto a la imposición de la pena

más benigna. Esto, debido a que el Art. 9 codifica el principio de favorabilidad y, en consecuencia, dispone que se impondrá la sentencia más benigna aunque la ley vigente al tiempo de cometerse el delito sea distinta. Mientras que el Art. 308 establece que la conducta realizada con anterioridad a la vigencia del Código Penal de 2004 se regirá por las leyes vigentes al momento del hecho.

I

Por conducta ilícita ocurrida el 13 de abril de 2004, mientras se encontraba en vigor el Código Penal de 1974, el Sr. Nelson Negrón Rivera fue acusado por el delito grave de posesión con intención de distribuir sustancias controladas.[50] También se le imputó reincidencia por haber sido sentenciado en dos ocasiones anteriores.[51]

El 1 de mayo de 2005 comenzó la vigencia del Código Penal de 2004. Posteriormente, se celebró el juicio en su fondo y el 22 de diciembre de 2006 el Tribunal de Primera Instancia sentenció al señor Negrón Rivera de acuerdo con el derogado Código. Esto, a pesar de que el Código Penal de 2004 se encontraba en vigor y establecía una pena más benigna para la reincidencia habitual.

II

La controversia ante nuestra consideración requiere que dilucidemos si una persona imputada por conducta

---

[50]Art. 401(a)(2), Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2401.

[51] Una por tentativa de recibo y transportación de bienes apropiados ilegalmente bajo el Código Penal de 1974 y otra por seis cargos de posesión de narcóticos bajo la Ley de Sustancias Controladas.

delictiva ocurrida antes del 1 de mayo de 2005, pero que aún se encuentra pendiente de ser sentenciada, puede beneficiarse de las disposiciones del Código Penal de 2004 en cuanto a la pena, en virtud del Art. 9 de dicho Código.

El Art. 8 del Código Penal de 2004, 33 L.P.R.A. sec. 4636, describe como regla general la aplicación prospectiva de la ley penal, en particular del Código Penal, de una forma cónsona con la prohibición constitucional de leyes *ex post facto*. Al aludir a una ley *ex post facto* nos referimos a la aplicación retroactiva de una ley que agrava para el acusado su relación con el delito, la oportunidad de defenderse y la forma de cumplir una sentencia o su extensión. Véase, E.L. Chiesa Aponte, <u>Derecho Procesal Penal de Puerto Rico y Estados Unidos</u>, Colombia, Ed. Forum, 1992, Vol. II, Sec. 19.1, págs. 545-549. Pero la prohibición de leyes *ex post facto* es un concepto distinto a la concesión legislativa para que en determinadas circunstancias se aplique la pena más benigna a un imputado. Por ello, como excepción a la aplicación prospectiva de las leyes penales, la Asamblea Legislativa puede aprobar una disposición más favorable y hacerla retroactiva en cuanto estime apropiado.

Al respecto, el Art. 9 del Código Penal de 2004, 33 L.P.R.A. sec. 4637, dispone lo siguiente:

> La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:
>
> (a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al

**procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.**

(b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o a la medida de seguridad o al modo de ejecutarlas, se aplicará retroactivamente.

(c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y la persona liberada, de estar recluida o en restricción de libertad. En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho. Íd. (Énfasis nuestro.)[52]

Según el Art. 9 del Código Penal de 2004, y en lo pertinente, la ley penal debe aplicarse retroactivamente si la pena vigente al momento de la sentencia es menor que la establecida cuando se cometió el delito. Véase, L.E. Chiesa Aponte, _Derecho Penal Sustantivo_, San Juan, Publicaciones JTS, 2007, pág. 55. En la doctrina se reconoce que "si la

---

[52]El Código Penal de 1974 reconoció por primera vez este principio. El Art. 4 del derogado Código establecía el principio de favorabilidad de la siguiente manera:

Las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito.

Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna.

Si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución la misma se limitará a lo establecido por esa ley.

En los casos de la presente sección los efectos de la nueva ley operarán de pleno derecho. 33 L.P.R.A. sec. 3304 (derogado).

ley más favorable es promulgada con posterioridad a los hechos pero antes del juicio, deberá ser aplicada en la sentencia que se dicte". F. Muñoz Conde, Derecho Penal, Parte General, 7ma ed., Valencia, 2007, pág. 140.

Claro está, al ser la aplicación retroactiva de las disposiciones legales que beneficien al imputado una prerrogativa de la Asamblea Legislativa, como lo sería un tipo que reúna elementos específicos más difíciles de cumplir para el delito en cuestión, el legislador puede delimitar la disposición particular según su parecer. Es por esto que la Asamblea Legislativa incluyó el Art. 308 del Código Penal de 2004, 33 L.P.R.A. sec. 4935, que dispone una cláusula de reserva parcial, la cual, en lo pertinente, establece que "[l]a **conducta** realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho". Íd. (Énfasis nuestro.)

La Asamblea Legislativa aprobó la expresión palmaria de que la "conducta" que constituyera delito con anterioridad a la vigencia del Código Penal de 2004 se regiría por las leyes vigentes al momento del hecho. El texto claro de la ley es la expresión por excelencia de la intención legislativa, particularmente en el campo penal. Pueblo v. Jesús Delgado, 155 D.P.R. 930, 941 (2001); Pueblo v. Rexach Benítez, 130 D.P.R. 273, 302 (1992). El sujeto indiscutible del primer párrafo del Art. 308 es la

"conducta", según lo dispuesto por el legislador, por lo que tal párrafo va dirigido a establecer una cláusula de reserva parcial al respecto. Esto es, el único asunto en el aludido párrafo para el cual el legislador prohibió la aplicación retroactiva del Código Penal de 2004 es para la "conducta" realizada con anterioridad a la vigencia de dicho Código.

Ahora bien, ¿qué significa "conducta" en el Art. 308? ¿Significa "pena"? ¿O se refiere a las acciones u omisiones que constituyen el tipo delictivo según la ley penal vigente antes de la entrada en vigor del Código Penal de 2004?

El Art. 14 del nuevo Código, 33 L.P.R.A. sec. 4642, no define la palabra "conducta", por lo que debemos interpretarla "según el contexto y el significado sancionado por el uso común y corriente". Art. 13 del Código Penal de 2004, 33 L.P.R.A. sec. 4641. Además, debemos tener presente que la interpretación de los estatutos penales debe hacerse de manera restrictiva en cuanto perjudica al acusado y liberalmente en cuanto lo favorece. Pueblo v. Flores Flores, res. el 23 de mayo de 2011, 2011 T.S.P.R. 38; Pueblo v. Negrón Caldero, 157 D.P.R. 413, 423 (2002); Pueblo v. Rodríguez Jiménez, 128 D.P.R. 114, 119 (1991). Asimismo, las disposiciones de una ley deben ser examinadas e interpretadas de modo que conduzcan a resultados armoniosos. Pueblo v. Rivera Martell, 173 D.P.R. 601, 612 (2008); Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 548 (1999).

La Real Academia Española define "conducta" como la "manera que una persona se comporta en su vida y acciones", y como el "conjunto de las acciones con que un ser vivo responde a una situación". Real Academia Española, Diccionario Esencial de la Lengua Española, 1ra ed., Ed. Espasa, 2006, pág. 382. También se define como la forma y manera en que el ser humano gobierna su vida y dirige sus acciones. I. Rivera García, Diccionario de Términos Jurídicos, New Hampshire, 2da Ed. Revisada, Equity Publishing Corp., 1989, pág. 49. La conducta supone alguna acción u omisión. Y para que exista conducta antijurídica penal se requiere un acto cometido u omitido que viole alguna ley que lo prohíba u ordene. El comportamiento humano es una exigencia de los tipos penales. S. Mir Puig, Derecho Penal Parte General, 8va ed., Barcelona, Ed. Reppertor, 2008, pág. 177. Así, pues, en el derecho penal el término "conducta" es la primera condición para la imputación del resultado típico y sin ella éste no puede imputársele a nadie. Íd., pág. 178. Sin conducta no hay configuración de delito alguno. El fundamento es sencillo. Cuando hay ausencia de conducta humana no sólo falta la tipicidad penal, sino también la imputación personal del hecho, a saber: el delito. Íd.

La pena, en cambio, es la consecuencia jurídica primaria de la conducta considerada como delito. Véase, S. Mir Puig, op. cit., pág. 663. Dicho de otra manera, la pena es el castigo para la conducta antijurídica penalmente

típica. Por ello, resulta evidente que "conducta" y "pena" son términos distintos.

El trasfondo histórico de la cláusula de reserva parcial ilustra el alcance del Art. 308. A este articulado le preceden las cláusulas de reserva del Código Penal de 1974 —Arts. 281 y 282— que el legislador justipreció debían ser revisadas. El entonces Art. 281 disponía lo siguiente:

> La promulgación de este Código no constituye impedimento para acusar o perseguir y **castigar** un hecho ya cometido en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal. 33 L.P.R.A. sec. 4625 (derogado). (Énfasis nuestro.)

Nótese que el lenguaje empuñado por esta cláusula de reserva derogada incluye el término "castigar", el cual de conformidad con tal Código guarda inextricable relación con la pena. Véase, Art. 60 del Código Penal de 1974, 33 L.P.R.A. sec. 3284 (derogada). Por lo tanto, esta derogada cláusula de reserva prohibía de forma indubitada la aplicación retroactiva de las nuevas penas que disponía dicho Código. Pero además de lo anterior, el Código Penal de 1974 contenía otra cláusula de reserva en su Art. 282 para impedir que pudiera invocarse retroactivamente el principio de favorabilidad de su Art. 4. El Art. 282 del derogado Código establecía lo siguiente:

> Las disposiciones del Artículo 4 [principio de favorabilidad] de este Código se aplicarán solamente con carácter prospectivo a partir de la fecha de su vigencia. 33 L.P.R.A. sec. 4626 (derogado).

De lo anterior surge claramente que el legislador no tuvo intención alguna de que el principio de favorabilidad

que en aquel entonces introducía, el cual aludía a las penas, pudiera beneficiar a quienes cometieran algún delito bajo la ley anterior, pero que fueran sentenciados con posterioridad a la vigencia del Código Penal de 1974.

El historial legislativo de la cláusula de reserva del Art. 308 del Código Penal de 2004 refleja la preocupación de que se entendiera, equivocadamente, que los **elementos específicos del tipo** particular del nuevo Código que fueren más beneficiosos aplicarían retroactivamente a las personas imputadas o sentenciadas según el Código Penal de 1974. El Informe de la Comisión de lo Jurídico del Senado de 22 de junio de 2003 reconoce esta situación y, por ello, expresa que la intención del legislador es que el Código Penal de 2004 aplique a delitos cometidos con posterioridad a su vigencia, para evitar que se suprimieran los procedimientos ya iniciados. Esto es, para impedir escenarios de impunidad producto de un vacío de legislación.[53]

Finalmente, el primer párrafo del Art. 308 del Código Penal de 2004 quedó codificado de la siguiente manera:

---

[53] El mencionado informe expresa lo siguiente:

> Esta Comisión acoge la recomendación de la Secretaria de Justicia de que se enmiende el P. de la S. 2302 para que en el Artículo 30[8] se elimine la oración "[s]in embargo, las disposiciones de este Código le serán aplicables si resultara de dicha aplicación un tratamiento más favorable al imputado o al sentenciado." La intención del legislador es que este Código aplique a delitos cometidos con posterioridad a su vigencia, salvo en cuanto a lo dispuesto en el segundo párrafo de ese artículo para el caso en que este Código suprima algún delito. Informe de la Comisión de lo Jurídico del Senado de 22 de junio de 2003. (Énfasis nuestro.)

> La **conducta** realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho.
>
> Si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y liberar a la persona. El cambio de nombre de un delito no significa que el tipo delictivo ha quedado suprimido. 33 L.P.R.A. sec. 4935. (Énfasis nuestro.)

Nótese que el legislador **no estimó apropiado** incluir en la redacción final del primer párrafo de la cláusula de reserva parcial del Art. 308 la palabra "delito", sino que empuñó el término "conducta". Eso significa algo. Pero la palabra "delito" no fue lo único que la Asamblea Legislativa excluyó. Esto también significa algo. En el ejercicio de sus prerrogativas el legislador eliminó toda referencia en el nuevo Código a la palabra "castigo" utilizada en el Art. 281 del Código Penal de 1974, el cual aludía a penas. Tampoco incorporó reserva alguna similar a la del Art. 282 del Código derogado para impedir que pudiera invocarse retroactivamente el principio de favorabilidad. El legislador no opera en el vacío y difícilmente puede argumentarse que la redacción empleada en la cláusula de reserva del Art. 308 respondió a un ejercicio de abstracción.

En Pueblo v. González Ramos, 165 D.P.R. 675 (2005), el peticionario alegó que debían aplicársele retroactivamente a través del Art. 9 del nuevo Código "las disposiciones 'más benignas', en cuanto a la **definición** de asesinato

estatutario". Íd., pág. 682. (Énfasis nuestro.) Ello, pues según adujo la nueva definición abolía la doctrina del *felony murder rule* y la interpretación del Art. 308 tenía el efecto de suprimir la **definición** anterior. Íd. En aquel entonces, resolvimos que el Código Penal de 2004 no suprimió el delito de asesinato estatutario tipificado en el Código Penal de 1976. Esto, pues el Art. 308 del nuevo Código disponía que procedía encausar la conducta tipificada como delito en el derogado Código que fuera realizada bajo la vigencia de éste. No estaba ante nuestra consideración si una persona que cometiera algún acto delictivo antes de la vigencia del nuevo Código, pero que fuera sentenciada con posterioridad a ésta, podía beneficiarse de la pena más benigna establecida por el Código Penal de 2004. Así, pues, nuestro análisis atendió el efecto de la cláusula de reserva del Art. 308 del nuevo Código sobre la conducta **según definida** como delito en el Código Penal de 1974. Ese es el único alcance vinculante de nuestras expresiones.

De hecho, luego de la decisión de este Tribunal en <u>Pueblo v. González Ramos</u>, *supra*, la Asamblea Legislativa rechazó aprobar legislación para que el principio de favorabilidad del Art. 9 del nuevo Código aplicara prospectivamente. Mediante el P. de la C. 2076 de 10 de octubre de 2005, algunos legisladores propusieron enmendar el Art. 9 para disponer, **por primera vez** en el nuevo Código, que tal artículo sólo tendría carácter prospectivo.

Esto, mediante la inclusión de un último párrafo a dicha disposición, a saber:

> En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho. *Las disposiciones de este Artículo se aplicarán solamente con carácter prospectivo a partir de la fecha de su vigencia.* Íd. (Énfasis en el original.)

Asimismo, propusieron que el primer párrafo del Art. 308 estableciera que la promulgación del Código Penal de 2004 no era óbice para imponer las penas del derogado Código para conducta ocurrida antes de la vigencia del nuevo Código. Esto, de la siguiente manera:

> La promulgación de este Código no constituye de sí impedimento para acusar o perseguir y **castigar** un hecho ya cometido en violación a las disposiciones del anterior Código Penal aquí derogado o de cualquier otra ley especial de carácter penal. Véase, P. de la C. 2076, *supra*. (Énfasis nuestro.)

No obstante lo anterior, estas propuestas no se convirtieron en ley. En cambio, fueron objeto de un informe que no recomendó su aprobación. Véase, Informe de la Comisión de lo Jurídico y Seguridad Pública del Senado sobre el P. de la C. 2076 de 9 de septiembre de 2008. Por lo tanto, forzoso resulta concluir que el legislador, aunque tuvo la oportunidad, ejerció su prerrogativa de no condicionar ni limitar la favorabilidad retroactiva de las penas en el nuevo Código.

Como Juez estoy impedido de limitar el Art. 9 y extender el alcance del Art. 308 del Código Penal de 2004 más allá de lo que la Asamblea Legislativa dispuso. El trasfondo histórico y legislativo del Art. 308, más la

**redacción elegida** por la Asamblea Legislativa para la cláusula de reserva del Código Penal de 2004, y el significado sancionado por el uso común y corriente, me obliga a concluir que la palabra "conducta", en el contexto del Art. 308, se refiere únicamente al acto cometido u omitido en violación de la ley penal derogada o de cualquier ley especial penal. Esto es, a los elementos constitutivos del delito.

De manera alguna el Art. 308 del Código Penal de 2004 impide la aplicación retroactiva del principio de favorabilidad de su propio Art. 9, en cuanto a la pena más beneficiosa para aquellas personas que cometieron algún delito antes de la entrada en vigor de dicho Código, pero que fueran sentenciadas con posterioridad a tal fecha. La pena no es conducta en sí, sino la consecuencia jurídica de ésta.

Si el legislador hubiera querido reservar la aplicación retroactiva del principio de favorabilidad, habría incorporado un lenguaje similar al del Art. 281 del derogado Código o una cláusula como la del Art. 282 de éste que limitara la aplicación en el tiempo de este principio. Pero mediante el Art. 308 del nuevo Código la Asamblea Legislativa, en el ejercicio legítimo de sus facultades, justipreció que la **definición** de lo que constituye conducta punible se regiría por el Código Penal de 1974, mientras que la pena a aplicarse sería la del nuevo Código, siempre que fuera la más benigna. Así lo establecen claramente los Arts. 9 y 308 del Código Penal de 2004 y así surge del

rechazo elocuente de la Asamblea Legislativa a restringir la retroactividad de la favorabilidad de la pena. El texto claro de la ley es la expresión por excelencia de la intención legislativa. Pueblo v. Jesús Delgado, *supra*; Pueblo v. Rexach Benítez, *supra*. Donde dice conducta no dice pena.

Recuérdese que la preocupación del legislador residía en que los **elementos específicos del tipo** particular del nuevo Código que fueren más beneficiosos aplicaran retroactivamente a las personas imputadas o sentenciadas de conformidad con el Código Penal de 1974. Ello hubiera creado múltiples escenarios inexplorados que podrían haber afectado el procesamiento efectivo de las causas en curso.

La intención del legislador no era suprimir los procedimientos ya iniciados. Con el lenguaje empleado en el Art. 308 del nuevo Código la Asamblea Legislativa atendió tal problema y garantizó la continuidad de los casos criminales, dejando incólume la definición anterior de los delitos, pero permitiendo la aplicación retroactiva de la pena más favorable. ¿Cómo limitar la nueva valoración legislativa de lo que constituye una pena apropiada para la conducta prohibida, cuando el propio legislador dejó a un lado las reservas del pasado y dio paso al principio de favorabilidad?

Aún bajo la tesis mayoritaria resulta inescapable aplicar la pena más benigna. Si fuera cierto que en virtud del Art. 308 del nuevo Código la controversia ante nos se rige en su totalidad por el Código de 1974, entonces habría

que aplicar el principio de favorabilidad del Art. 4 del Código de 1974 en cuanto a la pena más benigna que fuera aprobada con posterioridad a la vigencia de dicho Código. ¿Acaso el Código Penal de 2004 no es una ley posterior que en este caso provee una pena más benigna? Entonces, ¿dónde queda el principio de favorabilidad de la pena del Art. 4 del Código de 1974 que ordenó que si la ley posterior era más benigna sería esa la que tenía que ser aplicada en cuanto a la pena?

En suma, es mi criterio que la cláusula de reserva del Art. 308 va dirigida únicamente a impedir que se aplique retroactivamente la nueva definición de lo que constituyen los elementos del delito a conductas antijurídicas —no a sus consecuencias— realizadas antes de la vigencia del Código Penal de 2004. Y que en virtud de su Art. 9 el nuevo Código permite que se imponga la pena más benigna a las personas pendientes de sentenciar por conducta antijurídica ocurrida antes de su vigencia.

### III

Por los fundamentos antes expuestos, respetuosamente disiento del criterio mayoritario. Expediría el auto y resolvería según lo aquí intimado.

Luis F. Estrella Martínez
Juez Asociado